FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
Southern Division

00 MAR -2 PM 2: 22

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| HARLEYSVILLE MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )   CV-99-P-783-S |
| | ) |
| CAHABA VALLEY MILLWORK, INC., et al., | ) ) ) |
| Defendants. | ) |

ENTERED

MAR  2 2000

## Opinion

Before the court are three motions in this declaratory judgment action: (1) a Motion for Summary Judgment filed by Defendant National Union Fire Insurance Company on January 7, 2000; (2) a Motion for Summary Judgment filed by Defendant Capital Alliance Insurance Company on January 27, 2000; (3) and a Motion for Summary Judgment filed by Plaintiff Harleysville Mutual Insurance Company on February 16, 2000. These motions were taken under submission on February 28, 2000. For the reasons expressed below, all three motions are due to be granted.

### I. Facts

A dispute arose in 1995 when Cahaba Valley Millwork, Inc. allegedly misrepresented certain estimates and overcharged KAM Construction, Inc. for certain building supplies. As a result of the dispute between Cahaba Valley and KAM concerning payment for the supplies, Cahaba Valley filed a notice of materialman's lien on October 15, 1997. Thereafter, on December 4, 1997, Cahaba Valley filed suit in the Circuit Court of Jefferson County, Alabama to recover money KAM allegedly owed for the building supplies. On January 14, 1998, KAM filed an answer to the Cahaba Valley complaint denying that it owed money to Cahaba Valley. KAM also filed a counter-claim alleging five separate counts. The counterclaim alleges in count one that Cahaba Valley recklessly or intentionally overcharged KAM for sales taxes on certain materials and sets forth elements of an action for deceit. Counts two and three allege that Cahaba Valley intentionally or negligently misrepresented estimates for and overcharged KAM for building supplies and sets forth elements of claims for willful and negligent fraud and deceit. Count four is a claim for conversion which alleges that Cahaba Valley improperly obtained property of KAM and used it for its own benefit. Count five alleges that Cahaba Valley intentionally and wrongfully filed a lien against KAM.

On October 20, 1998, Cahaba Valley reported this lawsuit to Harleysville Mutual Insurance Company, who had issued a commercial general liability policy to Cahaba Valley that was in effect from June 21, 1995 to June 21, 1997. On November 6, 1998, after investigating the claims against

40

Cahaba Valley, Harleysville informed Cahaba Valley that it would defend the action under a complete reservation of rights. Cahaba Valley did not object to this representation, and the lawsuit proceeded to trial in April of 1999. During the course of the trial, the parties reached a settlement, under which Cahaba Valley agreed to pay KAM $100,000 to settle KAM's counterclaim and also agreed to drop the claim for payment of the building supplies. The court then entered a consent judgment based on the agreement of the parties.

On April 26, 1999, Harleysville initiated this action against Cahaba Valley and two other insurance companies who had previously issued policies to Cahaba Valley. Essentially, Harleysville seeks a declaration from the court regarding the general liability insurance coverage afforded to Cahaba Valley. On May 17, 1999, Defendant Capital Alliance Insurance Company filed a cross-claim against Cahaba Valley seeking a declaration that it has no duty to indemnify Cahaba Valley with respect to the underlying lawsuit. On May 25, 1999, Cahaba Valley filed an answer and counterclaim asserting bad faith against Harleysville in the defense of the underlying action. On June 4, 1999, Cahaba Valley brought a cross-claim against National Union seeking a declaration as to the liability coverage afforded to Cahaba Valley under a policy issued by National Union.

Defendants Capital Alliance and National Union and Plaintiff Harleysville Mutual have all filed motions for summary judgment seeking declarations regarding whether Cahaba Valley is afforded coverage under the insurance policies that each of these companies issued to Cahaba Valley. Harleysville has also moved for summary judgment with respect to Cahaba Valley's counterclaim. After having been given ample opportunity to respond to these motions, Cahaba Valley has declined to do so. Additionally, none of the parties seeking summary judgment opposes the other summary judgment motions pending before this court.

## II. The Insurance Policies Issued to Cahaba Valley

### A. The Capital Alliance Policy

Capital Alliance Insurance Company issued an occurrence-based liability policy to Cahaba Valley for the period of June 21, 1993 to June 21, 1995. This policy provided coverage for "occurrences," as defined by the policy, that arose during the policy period. "Occurrence" is defined by the policy as meaning "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damaged neither expected nor intended from the standpoint of the insured." The policy also provided that Cahaba Valley had a duty to provide "immediate written notice" to Capital Alliance of any loss that might be payable under the policy.

The underlying lawsuit between Cahaba Valley and KAM did not involve an "occurrence" as defined under the policy issued to Cahaba Valley by Capital Alliance. KAM's claims against Cahaba Valley allege various misrepresentations, overcharges, and wrongfully filed liens. These claims made against Cahaba Valley were based purely upon economic damages, not bodily injury or property damage as defined by the policy. Therefore, the damages sought by KAM are not covered by the policy issued by Capital Alliance. Furthermore, despite clear requirements in the insurance policy that Capital Alliance be immediately notified of any loss, Capital Alliance was not notified until ten months after KAM filed its counterclaim in the underlying lawsuit. Nor was Capital Alliance advised that the

underlying suit was set for trial or that settlement negotiations were on-going. Because these facts make clear that the money paid by Cahaba Valley is specifically excluded from coverage under the policy issued by Capital Alliance, Defendant Capital Alliance is entitled to summary judgment as to all claims asserted in the complaint.

B.  The National Union Policy

        National Union Fire Insurance Company issued an occurrence-based liability policy to Cahaba Valley for the period of June 21, 1997 to January 1, 1998. Like the policy issued by Capital Alliance, the policy issued by National Union applied to "bodily injury and property damage" caused by an "occurrence." "Occurrence" was defined in the policy as meaning "an accident, including continuous or repeated exposure to substantially the same general harmful condition." The policy also required that the insured "immediately" send copies of any demands, notices, summonses, or legal papers in connection with claims or lawsuits and provided that no insured could, except at their own cost, voluntarily make payment on a claim or assume obligation on a claim.

        In the present case, the underlying lawsuit between Cahaba Valley and KAM did not involve an "occurrence" as defined in the policy issued by National Union to Cahaba Valley. It is also undisputed that Cahaba Valley voluntarily entered the settlement to pay KAM $100,000 and voluntarily relinquished its materialman's lien against KAM as part of that settlement. Cahaba Valley never gave notice to National Union regarding its intent to settle this claim. Therefore, National Union cannot be held liable for the settlement payment or for reimbursement of the loss to Cahaba Valley from relinquishing its lien. As such, Defendant National Union is entitled to summary judgment as to all claims asserted in the complaint and cross-claim.

C.  The Harleysville Mutual Policy

        Harleysville Mutual Insurance Company issued a commercial general liability policy to Cahaba Valley for the period of June 21, 1995 to June 21, 1997. This policy also provided that coverage only applied to "bodily injury" or "property damage" which occurred during the policy period and was caused by an "occurrence." "Occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy also required Cahaba Valley to give Harleysville notice as soon as practicable of an occurrence and immediate notice of a "suit."

        In the present case, the counterclaim in the underlying lawsuit was filed against Cahaba Valley in January 1998; however, Harleysville was not notified of that claim until October of 1998. Nevertheless, Harleysville agreed to represent Cahaba Valley in the underlying lawsuit under a complete reservation of rights. Cahaba Valley argues that Harleysville's representation in the underlying action constitutes an irrevocable waiver by Harleysville of any policy defenses. Furthermore, Cahaba Valley asserts in their counterclaim that Harleysville exercised bad faith in defending the claims asserted by KAM in the underlying action.

        Despite the contentions of Cahaba Valley, the November 6, 1998 reservation of rights letter issued by Harleysville nullifies Plaintiff's waiver argument. Furthermore, it is apparent that coverage

under the Harleysville policy should not be provided in this case. In addition to the fact that there was no occurrence leading to bodily injury and property damage under the policy, Cahaba Valley failed to give Harleysville timely notice of the claim. *See Haston v. Transamerica Ins. Services*, 662 So. 2d 1138, 1141 (Ala. 1995). As such, Plaintiff Harleysville is entitled to summary judgment because the policy which it issued does not provide coverage for the claims asserted against Cahaba Valley in the underlying action.

Cahaba Valley's bad faith counterclaim also fails to set forth a viable cause of action against Harleysville. In *L&S Roofing Supply Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 521 So. 2d 1298 (Ala. 1987), the Alabama Supreme Court outlined the enhanced obligations and duties of insurers and defense counsel who defend cases under a reservation of rights:

> This enhanced obligation is fulfilled by meeting specific criteria. First, the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries. Second, it must retain competent defense counsel for the insured. Both retained defense counsel and the insurer must understand that only the insured is the client. Third, the company has the responsibility for fully informing the insured not only of the reservation-of-rights defense itself, but of all developments relevant to his policy coverage and the progress of this lawsuit. Information regarding progress of the lawsuit includes disclosure of all settlement offers made by the company. Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.

*L&S Roofing*, 521 So.2d at 1303 (quoting *Tank v. State Farm Fire & Casualty Co.*, 715 P.2d 1133, 1137 (1986).

Because Cahaba Valley has offered no evidence that Harleysville did not fulfill these obligations in defending Cahaba Valley in the underlying suit, Harleysville is entitled to summary judgment on Plaintiff's counterclaim.

### III. Conclusion

For the above reasons, the Motions for Summary Judgment filed by Plaintiff Harleysville Mutual Insurance Company, Defendant Capital Alliance Insurance Company, and Defendant National Union Fire Insurance Company are due to be granted.

Dated: _____March    2_____, 2000

_____
Judge Sam C. Pointer, Jr.

Service List:
    R. Larry Bradford
    David E. Miller
    Robert V. Rodgers

William A. Scott, Jr.
David Byers
James C. Ayers